**Joel SUEGART, Americo Herrera and Julio Pereyra, Plaintiffs,**

v.

**UNITED STATES CUSTOMS SERVICE, United States Customs Special Agent James T. Zogorsky, Confidential Informant Mike Girard, United States Customs Special Agent Markovchick, Defendants.**

Civ.A. No. 97–CV–6552.

United States District Court, E.D. Pennsylvania.

July 13, 1998.

David Seltzer, Jenkintown, PA, Fernando Koatz, Gleason & Koatz, New York City, for plaintiffs.

K.T. Tomlinson, U.S. Dept. of Justice, Philadelphia, PA, for defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

The Defendants have filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(5), for failure to complete proper service on Defendants. The Plaintiffs', filed a cross-motion and reply to Defendants' motion, pursuant to Federal Rule of Civil Procedure 4(m), to enlarge the time within which proper service of process upon Defendants can be made. For the reasons set forth below, Defendants' motion is denied in its entirety and Plaintiffs' cross-motion is granted.

### Background

Plaintiffs' action against the United States Customs Service alleges false imprisonment.[1] Plaintiffs filed claims against the United States Customs Agency, United States Customs Special Agents James T. Zogorsky ("Zogorsky") and Daniel Markovchick ("Markovchick"), and Confidential Informant, Mike Girard,[2] on October 23, 1997, alleging violations of 42 U.S.C. § 1983. Defendants, Zogorsky and Markovchick, claim that they have not been properly served by the plaintiffs because the plaintiffs have failed to serve the defendants in their individual capacities.

Plaintiffs properly filed service of process upon the United States Customs Service and the United States Department of Justice, on behalf of the Attorney General, on November 12, 1997. In addition, Plaintiffs properly served the United States Attorney's office for the Eastern District of Pennsylvania on January 8, 1998. With regard to the individual defendants, Zogorsky and Markovchick, Plaintiffs' counsel claims he had been unable to ascertain the location of the defendants in their individual capacities until March 21, 1998. Plaintiffs claim that they did not know where the individual agents resided or worked, and, with respect to agent Markovchick, the Plaintiffs did not know the correct spelling of his first or last name.

Plaintiffs' counsel claims that in an effort to locate Zogorsky and Markovchick, he telephoned both the Washington D.C. and the Baltimore branches of the United States Customs Service to determine if the individual defendants were based there. He also inquired as to the correct spelling of agent Markovchick's name. Plaintiffs' counsel asserts that after receiving a letter dated December 31, 1997, from Karen T. Tomlinson, Esq., ("Tomlinson") Assistant United States Attorney, counsel spoke with Tomlinson on January 6, 1998, regarding service of process and the time within which the United States would file an answer. Pursuant to Rule 12(a)(3) of the Fed.R.Civ.P., Tomlinson informed both this Court and Plaintiffs' counsel that she would be filing a responsive pleading to the complaint by March 9, 1998, sixty days after service had been effected on the United States Customs Service and the United States Attorney for the Eastern District of Pennsylvania. On March 6, 1998, Tomlinson filed an unopposed motion for extension of time to respond to Plaintiffs' complaint. The motion was granted by this

---

1. The facts and background concerning plaintiffs' arrest and criminal complaints are not included in this discussion as they have no bearing on the issue of lack of proper service.

2. Representation by the U.S. Attorney's office has neither been sought nor approved for Confidential Informant, Mike Girard. It is the United

States' understanding that he, too, has not been properly served with a copy of plaintiffs' complaint. There is no mention of any success or failure in having him properly served made by Plaintiffs' counsel. As such "defendants" in this case refer only to Special Agent Zogorsky and Special Agent Markovchick.

278

Court and Plaintiffs' time for response was extended until March 21, 1998. While the motion stated that as individual defendants, Zogorsky and Markovchick had not yet been served with plaintiffs' complaint, it also stated that these agents sought representation from the United States Department of Justice. Furthermore, the U.S. Attorneys office stated that for purposes of that motion they had limited authority to represent Zogorsky and Markovchick, and further representation was currently under review by the Department of Justice.

Plaintiffs' counsel claims that as a result of the conversation with Tomlinson regarding the extension of time she needed to answer his complaint, he understood her request to be an indication that the United States Attorney would represent the individual defendants. In addition, Plaintiffs' counsel claims that he, in good faith, believed that Tomlinson was waiving personal service on behalf of the individual defendants. Plaintiffs' counsel claims that it was not until he received the answer and the defendants' motion to dismiss, that he realized the time within which to serve the individual defendants had expired.

Furthermore, Plaintiffs' counsel contends that even after ascertaining that the individual defendants were based in the Philadelphia office, attempts to serve the defendants personally were frustrated by defendants' attempts to evade service of process. Plaintiffs' counsel sent a process server down to defendants' office both in the mornings and afternoons of March 24 and 25, 1998, as well as once on March 26, 1998, and each time the server was told the Defendants were not there. Plaintiffs' counsel claims that on the third and final attempt, the secretary at the office began to tell the process server how he could find the individual defendants, but another employee stopped her.

Plaintiffs' counsel claims that at no time was he ever able to ascertain the defendants' home addresses. On April 8, 1998, both Zogorsky and Markovchick were served personally at their offices.

By this motion, Defendants argue that this case should be dismissed under Fed.R.Civ.P. 12(b)(5). Defendants' 12(b)(5) motion rests upon the grounds that the Plaintiffs failed to complete proper service on these individual defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure.

Plaintiffs, in their cross-motion, argue that Defendants' motion be dismissed under Fed.R.Civ.P. 4(m). Plaintiffs' 4(m) motion to enlarge their time limit for service of process rests upon the grounds that dismissal would be fatal to the Plaintiffs' action and that Plaintiffs' counsel believed, in good faith, that defendants waived service.

### Discussion

■ Defendants' motion to dismiss for failure to complete proper service, invokes Fed.R.Civ.P. 12(b)(5). Under this rule a federal court is empowered to dismiss a case if service of process is insufficient. In determining a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(5), the party making the service has the burden of demonstrating its validity when an objection to the service is made. *Addanki v. Defense Logistics Agency Defense Personnel Support Center*, No. Civ. A.95–CV–696, 1996 WL 635590 at *1 (E.D.Pa. Oct. 31, 1996); *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir.1993) (citing 4A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1083 (1987)). Rule 4(m) defines the time in which service of process must be achieved. Rule 4(m) provides as follows:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

■ To analyze a Rule 4(m) challenge, the Third Circuit has instructed district courts to first determine whether good cause exists for an extension of time. If good cause is shown, the district court must extend the time for service and the inquiry is

ended. If, however, good cause is not shown, the court may, in its own discretion, decide whether to dismiss the case without prejudice or extend the time for service. *Spencer v. Steinman,* 968 F.Supp. 1011, 1014 (E.D.Pa. 1997); *see also Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1305 (3rd Cir.1995); *Momah v. Albert Einstein Medical Center,* 158 F.R.D. 66, 68 (E.D.Pa.1994). In addition, because Rule 4 does not define good cause, the Third Circuit has noted that the good cause standard is at least as stringent as the "excusable neglect" standard under Rule 6(b). *Momah,* 158 F.R.D. at 69 (citing *Dominic v. Hess Oil V.I. Corp.,* 841 F.2d 513, 517 (3d Cir.1988)). Accordingly, the party seeking to show excusable neglect must demonstrate that it made a good faith effort to comply with the rule as well as provide some reasonable justification for its noncompliance. *Momah,* 158 F.R.D. at 69 (citing *Dominic,* 841 F.2d at 517). Furthermore, the Third Circuit has enunciated a number of factors to consider in determining whether a party's neglect is excusable, including the following: (1) whether the neglect results from professional incompetence, (2) whether the excuse offered is of the type easily manufactured and not verifiable by the court, (3) whether the tardiness results from an attorney's failure to provide for a readily foreseeable consequence, (4) whether the neglect results from a complete lack of diligence, or (5) whether counsel made substantial good faith efforts toward compliance. *Momah,* 158 F.R.D. at 69 (citing *Dominic,* 841 F.2d at 517); *see also Sparks Tune–Up Centers, Inc. v. Padussis,* No. Civ.A. 88–9525, 1990 WL 87283 at *4 (E.D.Pa. June 19, 1990).

■ Applying these considerations to the case at hand, the Court finds that Plaintiffs have shown good cause for the failure to accomplish service of process within the time period allotted. Plaintiffs' counsel offers several explanations for why service of process was so difficult to obtain. To begin with, Plaintiffs' counsel was unable to identify from which office the individual defendants were based, as is often the case when trying to locate individual agents of a large government agency.[3] Plaintiffs' counsel placed calls to both the Washington and Baltimore offices of the United States Customs Service and was unable to obtain any information regarding the Defendants whereabouts. Subsequent to his search, Plaintiffs' counsel was contacted by Tomlinson regarding the extension of time she needed to answer Plaintiffs' complaint in order to obtain authority to represent the individual defendants. While never specifically stating that she would, in fact, be representing the defendants in their individual capacities, it is not inconceivable that Plaintiffs' counsel, in good faith, could have misunderstood her intentions to do so. Plaintiffs' counsel thus no longer believed that he had to serve the individual defendants as Tomlinson had waived personal service on their behalf. *See* (Plaintiffs memo at p. 3).

Furthermore, it was not until Plaintiffs' counsel received Defendants' answer to the complaint and motion to dismiss, that he learned that the individual defendants were located in Philadelphia. Since Defendants' counsel had been granted an additional two weeks to file her answer, by the time Plaintiffs' counsel received the answer and motion to dismiss, the 120–day time period for proper service of process had expired. Plaintiffs' counsel, nonetheless, attempted several times to have the defendants properly served. His efforts were frustrated by the defendants attempts to evade service of process as supported by the process server's affidavits. *See* (aff. of process server Scott Segal, March 26, 1998). Defendants were finally served on April 8, 1998, less than 30 days after the original 120–day period had expired.

---

3. Fed.R.Civ.P. 4(i)(3) appears to provide an exception to Fed.R.Civ.P. 4(m) in certain cases in which the plaintiff has tried, but failed to effect service upon the United States. Rule 4(i)(3) reads:

> the court shall allow reasonable time for service of process under this subdivision for the purpose of curing the failure to serve multiple officers, agencies, or corporations of the United States if the plaintiff has effected service on either the United States Attorney or the Attorney General of the United States.

The Advisory Committee's note to Rule 4(i) states that, "this rule saves the plaintiff from the hazard of losing a substantive right because of failure to comply with the requirements of multiple service under [Rule 4(i)]." Fed.R.Civ.P. 4(i) advisory committee's note (1983).

Taking all of these considerations into account, it seems clear that Plaintiffs' counsel has demonstrated a good faith effort to comply with Rule 4(m). *See Momah,* 158 F.R.D. at 69 (citing *Dominic,* 841 F.2d at 517); *see also Sparks Tune–Up Centers, Inc. v. Padussis,* 1990 WL 87283 at *4. In addition, he has provided this court with reasonable justifications for his non-compliance. *See Momah,* 158 F.R.D. at 69 (citing *Dominic,* 841 F.2d at 517); *see also Sparks Tune–Up Centers, Inc. v. Padussis,* 1990 WL 87283 at *4. Moreover, Defendants can show no evidence that the failure to serve them properly prejudices their ability to defend against this action. *Benjamin v. Grosnick,* 999 F.2d 590, 592 (1st Cir.1993). They had actual or constructive notice of the law suit, and successfully requested additional time to file an answer. *See* (Koatz Declaration ¶¶ 12, 14, and 17). Furthermore, because the statute of limitations on this action has run and Plaintiffs would be forever barred from pursuing this action, it is in the best interests of justice that Plaintiffs' request for enlargement of service of process be granted. *See generally* 42 Pa.Cons.Stat.Ann. § 5542 (West 1981) (the Pennsylvania statute of limitations for false arrest and imprisonment is two years); (Koatz Declaration ¶ 15) ("Even if the court dismissed the action without prejudice to renew, the plaintiffs would not be able to file a fresh action because the statute of limitations has run.").